**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 30 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMES D. CASTLEBERRY,

    Defendant-Appellant.

No.99-1238
(D.C. No. CR-98-336-WM)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **EBEL, HOLLOWAY** and **MURPHY**, Circuit Judges.

In this direct criminal appeal, we are called upon to examine a procedure under the

Sentencing Guidelines in effect before amendment in 1995. We also are presented with a

challenge to the restitution ordered by the district court. Our jurisdiction is conferred by 28

U.S.C. § 1291 and 18 U.S.C. § 3742.

**I**

Defendant/appellant James D. Castleberry was indicted on eight counts arising out of

an allegedly fraudulent scheme involving the acquisition of a franchise of a business known

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

as Mailboxes, Etc. The scheme allegedly was carried out in 1995 and 1996. Mr. Castleberry entered into a plea agreement under which he pleaded guilty to two of the eight counts, wire fraud in violation of 18 U.S.C. §§ 2 & 1343, and bank fraud in violation of 18 U.S.C. §§ 2 & 1344.

Mr. Castleberry previously had been convicted of mail fraud and embezzlement in the United States District Court for the District of Minnesota. In sentencing Mr. Castleberry for those crimes, the federal court in Minnesota determined that the guidelines sentencing range was twenty-four to thirty months. The district judge departed upwards from the guidelines range, however, and sentenced Castleberry to sixty months. That judgment was entered in 1997.

In the instant case, the district court determined the guidelines sentencing range to be fifteen to twenty-one months. III R. 58. The district court then faced the rather difficult problem of applying U.S.S.G. § 5G1.3, which we discuss in Part II below, to determine what part, if any, of the sentence should run consecutively to the Minnesota sentence and what part, if any, should run concurrently with that previous sentence. For now, we will simply note that the judge decided on a sentence of twenty-one months on each count, to run concurrently with each other. The judge originally ordered six months of that sentence to be served consecutively with the prior sentence, but he later amended his ruling and imposed the sentence so that only three months is to be served consecutively. The judge also ordered defendant to pay restitution in the amount of $126,658.26. Mr. Castleberry now appeals the

decision that he serve three months of his sentence consecutively and the order of restitution.

## II

Mr. Castleberry's first challenge is to the district court's application of U.S.S.G. § 5G1.3, which resulted in the decision that Castleberry would have to serve three months of his sentence in the instant case consecutively to the Minnesota sentence. Castleberry contends that the entire sentence should have been made to run concurrently with the Minnesota sentence. The parties agreed below, and continue to maintain on appeal, that this case must be governed by the 1994 version of the guidelines, and all references hereinafter are to that version.

In addressing this area before, we have observed that

> [i]n general, a district court has broad discretion in choosing to sentence a defendant to a consecutive or concurrent sentence. *See* 18 U.S.C. §§ 3553(a), 3584(a), (b). The court's discretion is confined, however, by § 5G1.3 of the Guidelines when it seeks to impose a consecutive or concurrent sentence upon a defendant subject to an undischarged term of imprisonment.

*United States v. Johnson*, 40 F.3d 1079, 1082 (10th Cir. 1994). Because this is an area of trial court discretion, our review is for abuse of discretion, provided that the sentencing court recognized the limits on its discretion set by the guidelines. *See United States v. Burt*, 134 F.3d 997, 1000 (10th Cir. 1998).

The parties agree that the applicable guideline provision is section 5G1.3, subsection (c). That subsection, which is identified as a Policy Statement, provides in pertinent part: "[T]he sentence for the instant offense shall be imposed to run consecutively to the prior

undischarged term of imprisonment to the extent necessary to achieve *a reasonable incremental punishment* for the instant offense." (Emphasis added.) The highlighted term, "reasonable incremental punishment," seems to be the touchstone for this narrow area of sentencing issues. And the guidelines created a procedure for determining the "reasonable incremental punishment."

It must first be noted, however, that this procedure is not required in all cases. Instead, the application note states: "*To the extent practicable*, the court *should* consider" the product of the procedure to be "a reasonable incremental penalty." U.S. Sentencing Guidelines Manual § 5G1.3, cmt. n.3 (amended 1995) (emphasis added). The procedure is first to calculate a hypothetical sentence based on what would have happened had the two proceedings been instead a single one. The court then is to calculate a hypothetical sentence that would have been imposed "had all the offenses been federal offenses for which sentences were being imposed at the same time." *Id.* Defendant asserts that under this procedure, the hypothetical sentence would have been a guidelines range of twenty-seven to thirty-three months. The government does not dispute this assertion, which is said to be consistent with a calculation actually made by the probation department.

The next step is to compare the hypothetical sentence with the actual previous sentence. As the illustrations to the application note demonstrate, this comparison will often define a range within which the second sentence should fall. In this case, the hypothetical sentencing range, as we have noted, apparently was calculated to be twenty-seven to thirty-

three months.[1] The sentencing range for the previous convictions was twenty-four to thirty months. Comparing these ranges, the district court could have concluded that three months was a reasonable incremental punishment. Indeed, it appears that this was the reasoning employed by the district judge in this case. *See* III R. 64-65. Although the district judge did not explain his reasoning in sufficient detail for us to follow it step by step, he did cite the appropriate guideline, referred specifically to the Minnesota sentence and the upward departure included therein, and noted that the departure by the previous sentencing court left it "anything but clear" how to apply section 5G1.3(c) and application note 3. III R. at 65. Significantly, the judge also said that he had "strong feelings about the need of punishment." *Id*. at 64.

Defendant's argument seems to be that a concurrent sentence was required in this case as a matter of law because the hypothetical maximum sentence of thirty-three months was less than the time left to be served on his previous sentence of sixty months. We disagree. Instead, had the district judge in the instant case adopted the defendant's suggested approach, the result would have been to fail to impose any reasonable incremental punishment for the instant offense. This approach would have the effect of giving the defendant "license" to commit fraud.

To explain how defendant's approach would amount to license to commit fraud, we

---

[1]The reader is reminded that the hypothetical sentencing range is calculated based on the presumption or fiction that the two sentencing proceedings were combined into one, which was under the federal guidelines.

refer to our unpublished decision in *United States v. Christopher*, 216 F.3d 1088 (table), 2000 WL 702397 (10th Cir. 2000). The parties have not referred us to any published decisions of our court, or of any court, applying section 5G1.3(c) in a situation like this in which the previous sentence included an upward departure from the guidelines range. Our unpublished opinions are not binding precedent, of course, but we find the analysis in *Christopher* persuasive. *See* 10th Cir. R. 36.3. Moreover, the circumstances of that case are closely analogous to those of the instant case. We therefore feel it appropriate to cite and rely on our unpublished *Christopher* opinion under our Rule.

In *Christopher*, the defendant had first been convicted of wire fraud in federal court in Rhode Island. The Rhode Island federal court had sentenced the defendant there to 121 months' imprisonment, a sentence which included a 75 month upward departure. After his conviction for a similar scheme in the District of Colorado, the district court followed the procedure of section 5G1.3(c) and calculated a hypothetical sentence range, one that included the fraudulent schemes in both Rhode Island and Colorado, of 63 to 78 months. The court determined that the sentencing range in the Rhode Island case, before the departure, was 46 to 57 months. The federal district judge in Colorado then subtracted the bottom numbers from these two ranges and arrived at seventeen months, which the judge concluded represented a reasonable incremental punishment. He therefore sentenced the defendant to a total of 46 months, with seventeen months to be served consecutively.

In reaching this conclusion, the district judge in *Christopher* made some pertinent

observations about the impact of the prior court's upward departure on the sentencing calculus for subsequent convictions. As reflected in the order of our court approving the rationale of the trial court in *Christopher*, the district judge reasoned that an unintended and undesirable result would be obtained if it, as the second sentencing court, included the upward departure by the first sentencing court in its analysis under section 5G1.3(c). If the upward departure were considered, the sentence for the first fraud would be much greater than the hypothetical sentence for both frauds calculated under note 3. The result would be that the first court's upward departure "would have the effect of shielding Mr. Christopher from punishment for his Colorado offenses. Indeed, any court's decision to upwardly depart would substantially insulate a defendant from punishment on future similar offenses." 2000 WL 702397 at *2, n.2.

We are persuaded by the analysis of *Christopher*, approving the reasoning of the district court in that case. As in that case, the district judge here clearly believed that some consecutive time was necessary to achieve a reasonable incremental punishment for the instant offense. We see no abuse of discretion in the instant case. We have considered Mr. Castleberry's argument that the sentence imposed upon him amounted to an upward departure in violation of the government's agreement not to seek such a departure. This argument is unfounded; there is no upward departure here.

**III**

As for the restitution order, Mr. Castleberry makes the unsupported assertion in his

brief (actually only in a heading in the brief) that the district court erred in calculating the amount of loss. We will not consider this argument because counsel has failed to even explain the assertion, much less to support it with references to the record which would enable us to review the sentencing court's calculations.

Castleberry also contends that the district judge failed to take into account his limited ability to pay restitution. We review underlying findings of fact for clear error and the amount of the restitution for abuse of discretion. *United States v. Olson*, 104 F.3d 1234, 1237 (10th Cir. 1997).[2] The sentencing court is not required to make specific findings regarding the defendant's ability to pay "so long as sufficient evidence was available to and considered by the sentencing court." *United States v. Wiktor*, 146 F.3d 815, 819 (10th Cir. 1998). We conclude that, as in *Wiktor*, the presentence report contained sufficient information, which the district judge clearly considered in reaching his decision to require restitution and in finding, on the other hand, that the defendant did not have ability to pay a fine in addition to restitution. *See id.*

The court ordered the $126,658.26 of restitution to be paid in monthly installments of at least $50.00. Obviously, if defendant were to pay only the minimum amount, he could not possibly make full restitution in his lifetime. But the presentence report reviewed

---

[2]In the instant case, the probation office recommended that the court apply the Victim and Witness Protection Act, rather than the Mandatory Victims Restitution Act of 1996 because the offense was committed before April 24, 1996, and the court apparently did so. Neither party has objected to this, and we likewise apply the earlier statutory provisions. *See United States v. Olson*, 104 F.3d at 1237 & n.2.

defendant's educational level and employment history and concluded that he had the capacity to earn a substantial amount of money in the future. In light of this, and the defendant's failure to show specifically why the district court should not have relied on this statement,[3] we see no abuse of discretion in the order for restitution.

## Conclusion

The defendant's sentence is **AFFIRMED.**

Entered for the court

William J. Holloway, Jr.
Circuit Judge

---

[3]*See United States v. Copus*, 110 F.3d 1529, 1537 (10th Cir. 1997) (burden on defendant to show inability to pay the full restitution).